**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

HARLIE THACKER                                                                                          PLAINTIFF
ADC #152566

V.                                       NO: 5:14CV00129 BSM/PSH

WENDY KELLEY *et al*                                                                            DEFENDANTS


**PROPOSED FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following Proposed Findings and Recommendation have been sent to Chief United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

Plaintiff Harlie Thacker filed this complaint on April 7, 2014, alleging defendants were deliberately indifferent to his serious medical needs. On October 12, 2015, defendants Jacqueline Carswell, Corizon LLC, Ramona Huff, Denise Krablin, and Sonya Anissa Peppers-Davis filed a motion for summary judgment, a statement of facts, and a brief in support (Doc. Nos. 51-53). They claim that no genuine issue of material fact exists, and the undisputed facts establish that plaintiff received appropriate care for his medical complaints. Plaintiff filed a response in opposition on November 10, 2015 (Doc. No. 55). The defendants filed a reply brief on November 17, 2015 (Doc.

1

No. 56).

## I. Standard of review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## II. Analysis

Plaintiff asserts he was denied adequate medical care for a variety of conditions, including pain, bleeding, cancer, stomach cramps, headaches, a right hand cramp, PTSD, and COPD, conditions which plaintiff claims defendants "agreed to let go untreated," despite sick calls and grievances (Doc. No. 3). Defendants argue plaintiff has received appropriate care for his

complaints. Because the undisputed facts demonstrate that plaintiff received medical care, and no defendant was deliberately indifferent to plaintiff's medical needs, their motion should be granted.

To succeed with an inadequate medical care claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

Prostate cancer

In November of 2011, prior to his incarceration, plaintiff was evaluated for prostate cancer. Loverd M. Peacock, M.D. began treatment with injections, and planned radiation therapy in two months (Doc. No. 52-1, pages 67-71). Plaintiff testified that he first entered the ADC on June 11, 2012 (Doc No. 52-2, page 10). Defendant Carswell, an Advanced Practice Nurse, saw plaintiff on July 17, 2012, where she noted his prostate cancer diagnosis, and planned to obtain his medical records and proceed with necessary consults. Carswell also ordered a urine dip for a possible urinary tract infection (Doc. No. 52-1, page 1). On September 4, 2012, plaintiff was seen by George Holitik, M.D., who noted plaintiff's lab results were mostly normal. Because plaintiff complained of a cough, Dr. Holitik ordered a chest X-ray, which was unremarkable (Doc. No. 52-1, pages 2-3).

Plaintiff was transferred to the Wrightsville Unit, and began radiation in January of 2013, which he completed on March 11, 2013 (Doc. No. 52-1, page 5-12 & 15-16). Thereafter, a May 28,

2013, PSA test was within normal limits (Doc. No. 52-1, page 19). Plaintiff saw Mohamed H. Kamel, M.D., on December 2, 2013, for an oncology follow up. At that time, Dr. Kamel noted the May PSA results, and ordered another PSA test and a follow up visit in six months (Doc. No. 52-1, pages 41-42).

<u>Bleeding and stomach problems</u>

Plaintiff also complained his claimed rectal bleeding and stomach problems were not treated properly. However, plaintiff's medical records demonstrate that his concerns were not ignored. On August 21, 2013, plaintiff complained of stomach problems (Doc. No. 52-1, page 29). A week later plaintiff was seen for complaints of rectal bleeding, but when he removed his diaper no blood or blood stains were seen, and he was told to return when there was blood in the diaper (Doc. No. 52-1, page 31). Plaintiff was seen in the clinic again the next day for complaints of rectal bleeding. Although plaintiff claimed his diaper was full of blood, none was visible on his clothing, and he did not bring a stained diaper to the infirmary (Doc. No. 52-1, page 32). On September 24, 2013, plaintiff was prescribed hemorrhoidal cream (Doc. No. 52-1, page 34). On October 4, 2013, APN Carswell saw plaintiff for complaints of rectal bleeding, and ordered an occult blood stool lab test (Doc. No. 52-1, page 36). Defendant Krablin noted at an October 16, 2013, visit that the stool test was negative (Doc. No. 52-1, page 37). On October 27, 2013, APN Carswell told plaintiff his ibuprofen was changed to Tylenol for pain, because ibuprofen can cause intestinal bleeding (Doc. No. 52-1, page 38). On January 8, 2014, plaintiff reported to the infirmary, presented two diapers filled with feces, and stated there was blood in it. The nurse observed no blood, but she gave plaintiff fecal occult testing cards (Doc. No. 52-1, page 48). Although it is not clear if that test was positive, plaintiff did at some point have a positive stool test, and Dr. Peppers-Davis completed a

consultation request for a colonoscopy on April 10, 2014 (Doc. No. 52-1, page 58).

Other conditions

Plaintiff's medical records also indicate he has regularly been provided with pain medication, and has been given inhalers for breathing difficulties (Doc. No. 52-1, pages 25, 30, 38, 40; Doc. No. 52-2, page 18). A mass on plaintiff's buttock was drained (Doc. No. 52-1, page 62), and plaintiff has been given antibiotics for his skin infections and a urinary tract infection, although there is evidence he has been non-compliant (Doc. No. 52-1, page 39, 50). Plaintiff has been prescribed Celexa for his psychiatric issues (Doc. No. 52-1, page 55), and testified that he is satisfied with his mental health treatment (Doc. No. 52-2, page 16 & 17).

It is clear that plaintiff has a number of significant medical issues. It is equally clear that plaintiff's conditions have not been ignored, but that he has received almost continuous testing, evaluation, and treatment for various conditions from the time he arrived at the prison until he filed his lawsuit, and medical records suggest the care is ongoing. Although plaintiff complains in his response that defendants have denied needed medical treatment, he does not identify any specific treatment which is needed and has been withheld. Additionally, Robert Floss, M.D., has provided an affidavit stating that in his opinion, the care provided to plaintiff for his medical conditions was appropriate and consistent with sound medical practices. Plaintiff has provided no medical opinion to suggest the care he received was deficient. Accordingly, no material facts are in dispute and defendants are entitled to summary judgment. *See Dulany v. Carnahan*, 132 F.3d at 1240 (in the face of medical records indicating that treatment was provided, and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he does not believe he received adequate treatment).

5

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (Doc. No. 51) be GRANTED, and plaintiff's complaint be DISMISSED.

2. Plaintiff's complaint be DISMISSED WITHOUT PREJUDICE with respect to his claims against Wendy Kelley and Sharon King, and DISMISSED WITH PREJUDICE in all other respects.[1]

3. The Court additionally certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this order or any judgment entered hereunder, would not be taken in good faith.

DATED this 31st day of March, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

---

[1] Plaintiff's claims against Kelley were dismissed without prejudice on September 2, 2014 (Doc. No. 35), and his claims against King were dismissed without prejudice on December 31, 2015 (Doc. No. 57).